# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| FELICITA CRUZ FLORES,<br><br>             Plaintiff,<br><br>     v.<br><br>NANCY BERRYHILL, ACTING<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>             Defendant. | No. CV 16-4987-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

## PROCEEDINGS

Plaintiff filed this action on July 7, 2016, seeking review of the Commissioner's[1] denial of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on August 1, 2016, and August 23, 2016. Pursuant to the Court's Order, the parties filed a Joint Stipulation (alternatively "JS") on July 27, 2017, that addresses their positions concerning the

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy Berryhill, the current Acting Commissioner of Social Security, is hereby substituted as the defendant herein.

disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

## II.

## BACKGROUND

Plaintiff was born on May 2, 1963. [Administrative Record ("AR") at 25, 130, 134.] She has past relevant work experience as a nurse assistant. [AR at 25, 55.]

On March 29, 2013, plaintiff protectively filed an application for a period of disability and DIB, and an application for SSI payments, alleging that she has been unable to work since February 17, 2013. [AR at 15, 130-33, 134-39.] After her applications were denied initially, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 15, 85-87.] A hearing was held on October 17, 2014, at which time plaintiff appeared represented by an attorney, and testified on her own behalf, with the assistance of an interpreter. [AR at 30-61.] Two medical experts ("ME"), Frank Barnes, II, M.D., and Betty L. Borden, Ph.D., and a vocational expert ("VE") also testified. [AR at 37-38, 54-60.] On December 1, 2014, the ALJ issued a decision concluding that plaintiff was not under a disability from February 17, 2013, the alleged onset date, through December 1, 2014, the date of the decision. [AR at 15-26.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 8.] When the Appeals Council denied plaintiff's request for review on May 4, 2016 [AR at 1-5], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

## A.    THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996. In the first step, the Commissioner must

determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. Id. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since February 17, 2013, the alleged onset date.[2] [AR at 17.] At step two, the ALJ concluded that plaintiff has the severe impairment of "Major Depressive Disorder with psychotic features, psychotic features resolved." [Id.] At step three, the ALJ determined that plaintiff does not have

---

[2]    The ALJ concluded that plaintiff meets the insured status requirements of the Social Security Act through December 31, 2017. [AR at 17.]

an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing.  [AR at 18.]  The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform a full range of work at all exertional levels, and that she "can understand, remember and carry out simple repetitive tasks with occasional contact with the general public," and "can interact with supervisors and coworkers." [JS at 20.]  At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is unable to perform her past relevant work as a nurse assistant.  [AR at 25, 56-57.]  At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as a "linen room attendant" (Dictionary of Occupational Titles ("DOT") No. 222.387-030), "laundry worker I" (DOT No. 261.384-014), and "cleaner, lab equipment" (DOT No. 381.687-022).  [AR at 25, 58-59.]  Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of February 17, 2013, through December 1, 2014, the date of the decision.  [AR at 32.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred when he:  (1) assessed plaintiff's "improved mental condition after mid 2013"; and (2) evaluated plaintiff's subjective symptom testimony.  [JS at 4.]  As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

## A.    ALJ'S ASSESSMENT OF PLAINTIFF'S MENTAL CONDITION

### 1.    Legal Standard

"There are three types of medical opinions in social security cases:  those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec.

---

[3]    RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527. The Ninth Circuit has recently reaffirmed that "[t]he medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] case record.'" Trevizo v. Berryhill, 862 F.3d 987, 997 (9th Cir. 2017) (quoting 20 C.F.R. § 404,1527(c)(2)). Thus, "[a]s a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830; Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citing Ryan, 528 F.3d at 1198); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010). When a treating physician's opinion is not controlling, it is weighted according to such factors as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician. Trevizo, 862 F.3d at 997 (citing 20 C.F.R. § 404.1527(c)(2)-(6)). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan, 528 F.3d at 1198.

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." Trevizo, 862 F.3d at 987 (citing Ryan, 528 F.3d at 1198). Where such an opinion is contradicted, however, the ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence in the record. Id. (citing Ryan, 528 F.3d at 1198); Ghanim v. Colvin, 763 F.3d 1154, 1160-61 (9th Cir. 2014); Garrison, 759 F.3d at 1012. The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick, 157 F.3d at 725. The ALJ "must set forth his own interpretations and explain why they, rather than the [treating or examining] doctors', are correct." Id.

Finally, although the opinion of a non-examining physician "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician," Lester, 81 F.3d at 831, state agency physicians are "highly qualified

physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); Soc. Sec. Ruling 96-6p; Bray v. Astrue, 554 F.3d 1219, 1221, 1227 (9th Cir. 2009) (the ALJ properly relied "in large part on the DDS physician's assessment" in determining the claimant's RFC and in rejecting the treating doctor's testimony regarding the claimant's functional limitations). Reports of non-examining medical experts "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

### 2.    The Medical Opinions

#### a.    Treating Physician

On July 10, 2014, Dr. Cynthia Washington, plaintiff's treating psychiatrist at West Central Family Mental Health Center (alternatively "WCFMHC"), completed a "Mental Residual Functional Capacity Questionnaire." [AR at 244-50.] In that questionnaire, Dr. Washington indicated that she had seen plaintiff every 1-3 months since May 8, 2013. [AR at 244.] She diagnosed plaintiff with major depressive disorder, severe, with psychotic features; and with panic disorder. [Id.] She opined that plaintiff has (1) marked limitations in her ability to remember locations and work-like procedures; maintain concentration and attention for extended periods; work in coordination with or proximity with others without being distracted by them; make simple work-related decisions; ask simple questions or request assistance; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and (2) extreme limitations in her ability to understand, remember and carry out detailed instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary work routine without special supervision; complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; respond appropriately to changes in the work setting; travel in unfamiliar places or use public transportation; set realistic

goals or make plans independently of others; and tolerate normal levels of stress. [AR at 247-49.] She found plaintiff had (1) mild limitations in her ability to understand, remember, and carry out short and simple instructions; and (2) moderate limitations in her ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and to be aware of normal hazards and take appropriate precautions. [Id.] Dr. Washington opined that plaintiff would require unscheduled breaks in addition to "the 3 usual breaks" in an 8-hour workday, and noted that plaintiff is "easily overwhelmed by everyday stresses." [AR at 249.] She estimated plaintiff would be absent more than four days per month due to her impairments or treatment, and stated that she has a current history of "1 or more years' inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement." [AR at 250.]

The ALJ gave Dr. Washington's opinion "less weight" for several reasons: (1) there was no evidence that plaintiff "has difficulty adhering to basic standards of neatness and cleanliness"; (2) clinical findings did not show "marked or extreme limitations in social functioning" and plaintiff was described as "cooperative and agreeable by all medical sources, even early in her treatment . . ."; (3) while plaintiff may have a moderate concentration deficit, the records did not "show marked or extreme limitations" because she had "no active psychoses after a short course of treatment and clinical findings show she retains the ability to perform calculations and understand, remember and carry out instructions," as well as perform serial sevens; (4) "alleged psychoses were not readily apparent according to the mental status examination" conducted on April 15, 2013; and (5) there is no evidence to support Dr. Washington's "more dire limitations," such as "needing more than 3 breaks during a typical day, based on the efficacy of medication and therapy as shown in the overall record." [AR at 22-23 (citations omitted).]

/

/

/

### b. Consultative Examiner

On September 22, 2013, the consultative examining psychiatrist, Raymond Yee, M.D., found that plaintiff has the ability to perform simple and repetitive tasks, as well as detailed and complex tasks; accept instructions from supervisors, and interact with coworkers and the public; perform work activities on a consistent basis without special attention or supervision; maintain regular attendance and complete a normal workday and workweek without interruption from a psychiatric condition; and deal adequately with stressors of competitive employment. [AR at 231-36.] There was no interpreter present at the examination. [AR at 231.]

The ALJ gave "high weight" to "portions" of Dr. Yee's opinion, but nevertheless found it "reasonable to limit [plaintiff] from detailed or complex instructions/tasks." [AR at 22.]

### c. The Medical Expert

The ALJ gave "high weight" to the opinion of Dr. Betty Borden, the ME who testified at the October 17, 2014, hearing regarding plaintiff's mental health. [AR at 23-24.] Based on her review of the record, Dr. Borden opined that plaintiff has depression, and experienced a brief psychotic episode in February 2013, which met Listing 12.04 for about 2-3 months, but that plaintiff's psychoses resolved and her symptoms showed improvement with medication. [AR at 50-52.] She believed that Dr. Washington's limitations were "inconsistent with treatment notes indicating improvement" and with Dr. Yee's report, which also showed improvement. [AR at 51-52.] Dr. Borden opined that plaintiff could understand, remember, and carry out simple, repetitive tasks with no more than occasional contact with the general public; and could interact with supervisors and co-workers. [AR at 52-53.] She saw no reason why plaintiff could not be relied upon to show up and be at work on a full-time basis; and noted that plaintiff's presentation at the hearing was consistent with more recent treatment records. [AR at 53-54.] The ALJ noted that Dr. Borden's assessment was consistent with the overall record, and that clinical findings in the record "show no greater than moderate deficits in concentration as [plaintiff] is able to interact with others in a socially appropriate manner," is able to attend to her own affairs and make decisions for herself, and is able to function independently "outside the area of her home." [AR at 23-24.]

### 3. Analysis

The ALJ's rejection of Dr. Washington's opinion was legally erroneous. [See AR at 22-23.] It does not appear that he considered the length of the treating relationship (May 2013 through July 2014), the frequency of examination (every one to three months), or the nature and extent of the treatment relationship (mental health treatment referral following plaintiff's psychotic episode in February 2013, and including individual and group counseling; follow up support; medication appointments; emergency medication doctor referrals; routine assessments; and complex medication support services). Trevizo, 862 F.3d at 997 (citation omitted). Additionally, in giving "high weight to portions" of Dr. Yee's opinion, who saw plaintiff only on one occasion, the ALJ failed to mention that Dr. Yee apparently did not review *any* of plaintiff's mental health records. [See, e.g., AR at 231 (stating that "[t]here are no mental health records in the chart").] Thus, although Dr. Yee's opinion was based on his own examination of plaintiff, he admittedly had an incomplete picture of the history and progress of plaintiff's mental health issues and treatment.

With respect to the supportability of Dr. Washington's opinion, and its consistency with the record,[4] the ALJ first noted that in contrast to Dr. Washington's finding that plaintiff had moderate difficulty adhering to basic standards of neatness and cleanliness, other medical sources observed her to be well-groomed and appropriately dressed. [AR at 23 (providing no citation).] A review of the record reflects that on March 25, 2013, plaintiff was described as "[c]lean, well-groomed," but was also described as having delusions that the smoke detector was taking pictures of her and that she was going to get AIDS or go to hospice [AR at 219]; on April 18, 2013, her grooming and hygiene were reported as "average" [AR at 265]; on July 23, 2013, her appearance was noted as "disheveled" [AR at 289]; and on November 12, 2013, her appearance was noted to be "casual," without further explanation. [AR at 281.] On July 3, 2014, was plaintiff noted to be "*appropriately dressed and groomed*" [AR at 253], and on September 22, 2013, Dr. Yee reported plaintiff had

---

[4]   "The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings," or explains the medical opinion, the more weight will be given to that opinion. 20 C.F.R. § 404.1527(c)(3). The more consistent a medical opinion is with the record as a whole, the more weight will be given to that opinion. Id. § 404.1527(c)(4).

"*good* grooming and *good* hygiene," and was *well* dressed. [AR at 233 (emphasis added).] More importantly, however, the "activity" Dr. Washington noted to be "moderate," actually stated in its entirety: "*[t]he ability to maintain socially appropriate behavior and* to adhere to basic standards of neatness and cleanliness." [AR at 249 (emphasis added).] The compound nature of this activity (notwithstanding its conjunctive nature), leads at least to some ambiguity as to whether Dr. Washington considered *both* whether plaintiff has the ability to maintain socially appropriate behavior, *and* whether she is able to adhere to basic standards of neatness and cleanliness, when responding to this question. That is, Dr. Washington could have found that plaintiff had moderate limitations in her ability to maintain socially appropriate behavior and no limitations in her ability to "adhere to basic standards of neatness and cleanliness" and yet still found moderate limitations in response to that question. Thus, this was not a specific and legitimate reason supported by substantial evidence to discount Dr. Washington's opinion.

The ALJ next discounted Dr. Washington's opinion because there were no clinical findings showing "marked or extreme limitations in social functioning," as plaintiff was "described as cooperative and agreeable by all medical sources, even early in her treatment." [AR at 23 (citing AR at 226, 233, 242 (which makes no mention of either cooperation or agreeableness), 273).] The limitations the ALJ appears to be referring to in this instance probably include Dr. Washington's findings of marked and extreme limitations in plaintiff's ability to interact appropriately with the general public; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; respond appropriately to changes in the work setting; and work in coordination with or proximity to others without being distracted. [AR at 248-49.] However, the ALJ does not explain how being perceived as cooperative and agreeable is inconsistent (if it is) with having marked or extreme limitations in social functioning. This is especially true where, as here, some of the symptoms observed and reported by Dr. Washington that might influence "social functioning," include "pervasive loss of interest in almost all activities"; blunt, flat, or inappropriate affect; easy distractability; emotional withdrawal; generalized persistent anxiety; paranoid thinking or inappropriate suspiciousness; recurrent severe panic attacks; and

"vigilance and scanning." [AR at 245-46.] Also of note, one of the records cited to by the ALJ in support of his finding described plaintiff as "cooperative, and agreeable *to discharge plan*," and was dated February 28, 2013 -- during the period Dr. Borden found plaintiff to *meet* Listing 12.04. [AR at 226 (emphasis added).] Another record relied on by the ALJ was an April 18, 2013, Progress Note from WCFMHC, a few days after plaintiff's initial assessment there (which also appears to be within Dr. Borden's 2-3 month period when plaintiff met Listing 12.04), which described plaintiff's "interactional style" as cooperative and went on to note that plaintiff "appeared cooperative throughout session, [and] was in complete agreement with goals discussed . . . ," but also exhibited pressured speech at times. [AR at 273.] The third record the ALJ relied on was Dr. Yee's September 22, 2013, mental status examination finding that plaintiff was "polite, cooperative and friendly." [AR at 233.] None of these records provides *any* evidence that being cooperative and agreeable is in any way inconsistent with Dr. Washington's findings of marked and extreme limitations in "social functioning." Indeed, as discussed, two of these notes reflecting plaintiff's cooperation and agreeableness [AR at 226, 273] were actually written during the period when Dr. Borden opined plaintiff *met* Listing 12.04.

Similarly, the ALJ appears to find an inconsistency between Dr. Washington's finding of a marked limitation in plaintiff's ability to "maintain attention and concentration *for extended periods*" [AR at 247 (emphasis added)], with plaintiff's ability to "perform calculations [including serial sevens, as found by sources at WCFMHC], "early in [plaintiff's] treatment," and "[to] understand, remember and carry out instructions." [AR at 23 (citing AR at 234 (Dr. Yee's consultative examination report)), 264.] However, the ALJ again provides no explanation as to *how* an inability to maintain concentration and attention *for extended periods* is inconsistent with the ability to perform serial sevens (presumably within a short time span) [AR at 264], or to correctly answer how many nickels are in a quarter, or to spell the Spanish word for "world" backwards and forwards. [AR at 234.] Neither does he explain how a marked limitation in the ability to maintain concentration and attention *for extended periods* is inconsistent with understanding, remembering, and carrying out instructions; in fact, he fails to state whether he is referring understanding, remembering, and carrying out  simple or detailed instructions, or both. [AR at 23.]

Based on the foregoing, the ALJ did not provide specific and legitimate reasons supported by substantial evidence for discounting the opinions of the long-term treating psychiatrist, Dr. Washington, in favor of either the consultative psychiatrist Dr. Yee, or psychologist Dr. Borden. As such, remand is warranted on the issue of the ALJ's assessment of plaintiff's alleged mental impairment after mid-2013.

**B.    SUBJECTIVE SYMPTOM TESTIMONY**

The ALJ discounted plaintiff's subjective symptom testimony based on a number of reasons: (1) plaintiff told inconsistent stories about why she stopped working[5]; (2) she was "less than fully compliant with treatment and medication"; (3) she showed significant improvement with medication by August 2013; (4) there is no support in the record for plaintiff's claim of memory loss; (5) there are no records from the treating sources or the consultative examiner that reflect disorientation, confusion, or delusions; (6) "it is not credible that a 'light' load of laundry would take 3 hours to wash and fold," particularly since plaintiff has no physical impairment and her son helps with the laundry; (7) there is no support for alleged coordination, standing, or walking problems; (8) records do not reflect "unrelenting or persistent thought process or thought content disorders" and show plaintiff could go to therapy or routine visits without her son; (9) the GAF scores in the record are "somewhat inconsistent with mental status examination findings" and seem to be based on environmental factors as opposed to psychiatric impairment; (10) plaintiff is stable on medication with significant improvement within a few months of conservative treatment; and (11) plaintiff sat through the entire hearing, maintained good eye contact, appeared to be in comfort, and showed no evidence of pain or tearfulness during the hearing. [AR at 21-22.]

Plaintiff argues that none of the reasons provided by the ALJ for discounting her subjective

_____

[5]    According to the ALJ, plaintiff told treating sources that she quit her job as a certified nurse assistant in 2009, but also reported that she stopped working in 2013 due to mental health issues. [AR at 21 (citing AR at 264, 294).]  The Court notes that these two statements are not necessarily inconsistent.  Indeed, the record appears to reflect that in 2009 plaintiff left her employment with Immaculate Heart Community, where she had worked since 2006 [AR at 141-43], and then worked elsewhere until 2011 when she appears to have started working for Immaculate Heart Community again, until she stopped working.  [See AR at 143.]

symptom testimony is clear and convincing, and defendant counters those arguments. Because the matter is being remanded for reconsideration of the medical opinions, and the ALJ on remand as a result must reconsider plaintiff's RFC in light of the record evidence, the ALJ must also reconsider on remand, pursuant to SSR 16-3p,[6] plaintiff's subjective symptom testimony and, based on his reconsideration of plaintiff's RFC, provide specific, clear and convincing reasons for discounting plaintiff's subjective symptom testimony if warranted. See Trevizo, 862 F.3d at 1000 n.5; Treichler, 775 F.3d at 1103 (citation omitted) (the "ALJ must identify the testimony that was not credible, and specify 'what evidence undermines the claimant's complaints.'"); Brown-Hunter, 806 F.3d at 493-94 (the ALJ must identify the testimony he found not credible and "link that testimony to the particular parts of the record" supporting his non-credibility determination).

## VI.

## REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Lingenfelter, 504 F.3d at 1041; Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or

---

[6]     The Ninth Circuit in Trevizo noted that SSR 16-3p "makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expect to produce those symptoms,' and 'not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.'" Trevizo, 862 F.3d at 1000 n.5 (citing SSR 16-3p). Thus, SSR 16-3p shall apply on remand.

misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, because the ALJ failed to provide specific and legitimate reasons for discounting the opinion of Dr. Washington, and thus erred in assessing plaintiff's purported impaired mental condition after mid-2013, the ALJ on remand shall reassess the entirety of the medical evidence. In assessing the medical opinion evidence, the ALJ must explain the weight afforded to each opinion and provide legally adequate reasons for any portion of the opinion that the ALJ discounts or rejects, including a legally sufficient explanation for crediting one doctor's opinion over any of the others. Second, the ALJ on remand, in accordance with SSR 16-3p, shall reassess plaintiff's subjective allegations and either credit her testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony. Finally, the ALJ shall reassess plaintiff's RFC and determine, at step five, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the national economy that plaintiff can still perform.[7]

/

/

/

/

/

/

/

/

/

/

/

---

[7] Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to return to her past relevant work.

## VII.

## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED:  August 14, 2017

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE